UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOBEIDA C.,[1]<br>    *Plaintiff*,<br>v.<br>KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,[2]<br>    *Defendant*. | No. 3:20cv269 (MPS) |

**RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER**

Plaintiff Sobeida C. brings this action against the Commissioner of Social Security under 42 U.S.C. § 405(g) challenging the denial of her applications for supplemental security income and disability insurance benefits under the Social Security Act. The Plaintiff argues that the Administrative Law Judge ("ALJ") improperly assessed the Plaintiff's credibility, erred in determining her residual functional capacity ("RFC"), and failed to meet his burden to show that other work exists in significant numbers in the national economy. ECF No. 14. The Commissioner moves for an order affirming the denial of benefits. ECF No. 15. For the reasons set forth below, I grant the Commissioner's motion and affirm the ALJ's decision.

I assume familiarity with the Plaintiff's medical history, as summarized in the Plaintiff's statement of facts, ECF No. 14-2, which the Commissioner incorporates and supplements, ECF

---

[1] As set forth in Chief Judge Underhill's January 8, 2021 Standing Order, this ruling identifies the Plaintiff using her first name and last initial. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

[2] Plaintiff commenced this action against Andrew M. Saul as the Commissioner of Social Security on February 28, 2020. ECF No. 1. Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Fed. R. Civ. P. 25(d), Commissioner Kijakazi is automatically substituted for Andrew M. Saul as the named defendant. The Clerk of the Court is requested to amend the caption in this case accordingly.

No. 15-2, and which I adopt and incorporate by reference. I also assume familiarity with the ALJ's opinion, the record,[3] and the five sequential steps used in the analysis of disability claims. I cite only those portions of the record and the legal standards necessary to explain this ruling.

## I. Standard of Review

"A district court reviewing a final [ ] decision ... [of the Commissioner of Social Security] pursuant to ... the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Lamay v. Astrue*, 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 405(g)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla" and "means and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations and internal quotation marks omitted). The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard," and "means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original) (internal quotation marks and citations omitted).

---

[3] Citations to the administrative record, ECF No. 13, appear as "R." Pagination is to the CM/ECF system's assignment of page numbers.

**II.     Discussion**

    **A.     Inconsistencies in Plaintiff's Testimony**

Although it is not set forth in the argument section of her brief and is unaccompanied by legal analysis, the Plaintiff makes an assertion that the ALJ incorrectly assessed certain aspects of her testimony. No. 14-1 at 2. Specifically, the Plaintiff challenges the ALJ's view that Plaintiff's testimony concerning the extent of her son's assistance, her utilization of a home health aide, her use of diapers, gaps in her medical treatment, and her level of education was inconsistent. No. 14-1 at 2 - 4.

An ALJ has an obligation to consider the plaintiff's subjective complaints when formulating the RFC, but is "not required to accept the claimant's subjective complaints without question; [the ALJ] may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). When evaluating symptoms, the ALJ must first determine whether the plaintiff has a "medically determinable impairment that could reasonably be expected to produce [the plaintiff's] symptoms, such as pain." 20 C.F.R. § 416.929(b). The ALJ must then evaluate "the intensity and persistence of [the plaintiff's] symptoms" to "determine how [the] symptoms limit [the plaintiff's] capacity for work." § 416.929(c); *see also* SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). The ALJ considers various factors including the claimant's daily activities, the frequency and intensity of pain, the type, dosage, effectiveness, and side effects of medication, and other treatment that relieves pain. *Jordan v. Barnhart*, 29 F. App'x 790, 794 (2d Cir. 2002); SSR 16-3p: Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029, at *7 (Mar. 16, 2016).

At the hearing, the Plaintiff testified as follows: she was unable to work due to pain in her hands, back, and legs. R. at 1336. She has no strength in her hands and her hands swell up. R. at

1340. She spends the day in bed and pain medications work for no more than three hours. R. at 1339. She watches television but cannot focus on what she is watching due to pain and the medication. *Id.* She cannot sit for more than ten to twenty minutes or stand more than twenty minutes. R. at 1336. Her doctors said her hips are like "cheddar cheese. Something with a lot of holes in it." R. at 1340. She uses diapers because it is hard to get to the bathroom in time. R. at 1341. She uses a cane all the time, a walker when she goes out, and a motorized scooter at the grocery store. R. at 1337. She requires significant assistance from her son and a "lady" who comes to help her with her children and take care of her. R. at 1338. She suffers from depression and panic attacks. R. at 1340.

After consideration of all the evidence, the ALJ found that the Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects of her impairments are not entirely consistent with the medical evidence and other evidence in the record . . . ." R. at 1283.

In evaluating the Plaintiff's testimony as to her symptoms and limitations, the ALJ methodically and carefully reviewed the extensive record and noted that neither diagnostic test results nor examination findings supported the degree of limitation the Plaintiff alleged. The ALJ observed that multiple reports failed to indicate the disabling limitations alleged. *See, e.g.* R. at 1803, 8/1/16 note denying back pain and weakness; R. at. 1859, 8/17/18 describing plaintiff as 41 year old "otherwise healthy female [who] presents for intermittent sore throat" and describing her as "extremely well-appearing"; R. at 1854, 2/22/19 note that plaintiff was seen for gastritis and denied back pain; R. at 1856, 11/18/19 note seen for abdominal pain and denied back pain. The ALJ also noted, and Plaintiff does not contest, that there is no evidence supporting her testimony

4

that doctors told her hips were in such bad shape they were like "cheddar cheese." R. at 1284. The ALJ detailed that xrays of her hips were normal or had mild findings. (R. at 1215, 10/28/14 xrays of pelvis and right hip essentially unremarkable; R. at 1867, 3/5/19 xray showed no evidence of acute osseous injury but showed minimal hip osteoarthritis bilaterally and mild to moderate arthritic changes in the SI joints and at the pubic symphysis.) The ALJ also stated that the Plaintiff's treatment regimen was not what would be expected from someone with debilitating impairments, noting that when seen in August 2017 after a hiatus in treatment, she denied back pain and had an unremarkable physical exam. R. at 1286, 1801. Plaintiff does not argue that the ALJ erred in evaluating the medical evidence or in finding that it was inconsistent with the Plaintiff's subjective complaints. The ALJ also noted a number of other discrepancies in Plaintiff's testimony. The Plaintiff maintains that the ALJ got a few of these wrong. But she does not dispute that, as the ALJ noted, she collected unemployment benefits after her alleged onset date. *See Wright v. Berryhill*, 687 F. App'x 45, 49 (2d Cir. 2017) (upholding ALJ's finding that the plaintiff had "diminished credibility" in light of, *inter alia*, her "representation of readiness and ability to work in connection with his receipt of unemployment benefits"). Or that the record reflected inconsistencies as to her date last worked. R. at 1281, 1663 (ALJ noted that plaintiff told Dr. Lago that she last worked in 2014.) The same report includes her statement that she cooks, cleans, and does chores. *Id.* The ALJ also noted that while at the SSA office, the Plaintiff was observed as having "no difficulty with using [her] hands" and "walked stiffly but able to bend over and pickup" her one year child. R. at 128.

Overall, the ALJ identified ample evidence in support of his conclusion that the Plaintiff's subjective complaints were not consistent with the record evidence. Given these findings and mindful that "an ALJ's credibility determination is generally entitled to deference on appeal,"

5

*Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013) (per curiam), I cannot find that the ALJ's evaluation of Plaintiff's testimony was not supported by substantial evidence. *See Wright v. Berryhill,* 687 F. App'x 45, 49 (2d Cir. 2017) (summary order) (describing the scope of review of an ALJ's credibility determination as "sharply limited"); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (An ALJ has the discretion to weight the credibility of a claimant's testimony "in light of the other evidence in the record."); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.").

### B.     RFC[4]

The Plaintiff argues that the ALJ's RFC determination was flawed. ECF No. 14-1 at 16. The ALJ found that Plaintiff had the RFC to perform:

> sedentary work as defined in 20 C.F.R. [§§] 404.1567(a) and 416.967.[5] The claimant can occasionally balance, stoop, kneel, and crouch. She can occasionally climb ramps and stairs. The claimant cannot engage in crawling. The claimant cannot climb ladders, ropes or scaffolds. The claimant can engage in frequent reaching, handling, fingering and feeling with her upper extremities. The claimant may use a cane as necessary for ambulation and balance, while remaining on task and holding light objects in the opposite hand. The claimant can have rare exposure to pulmonary irritants such as dust, fumes, gases, odors and poor ventilation as well as rare exposure to extreme cold and heat. The claimant cannot be exposed to unprotected heights. The claimant is limited to simple routine tasks. (Rare refers to 1% to 5% of the work day).

R. at 1283. The Plaintiff confines her attack to the ALJ's finding that the "claimant may use a case as necessary for ambulation and balance while remaining on task and holding light objects in the opposite hand." She conclusorily asserts, without citation to any authority, that this finding is

---

[4] The Residual Functional Capacity evaluation, or RFC, is an assessment of "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).
[5] The sedentary level of exertion calls for lifting no more than ten pounds at a time, with only about two hours of standing and/or walking and about six hours sitting out of an eight-hour workday. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).

6

beyond the ALJ's purview and is instead a vocational assessment. ECF No. 14-1 at 17. The Plaintiff does not elaborate on her barren assertion that the ALJ cannot opine as to the plaintiff's ability to remain on task or point to record evidence that undermines the finding. Nor does she explain why this particular portion of the RFC should fall within the purview of a vocational expert - who would ordinarily have no information or expertise regarding a claimant's ability to stay on task - rather than an ALJ. In any event, this cursory argument does not warrant reversal.

### C. Step 5

Next, the Plaintiff argues that the ALJ's finding at step 5 is not supported by substantial evidence. ECF No. 14-1 at 12. The Plaintiff contends that the ALJ improperly relied on the vocational expert's testimony as to the number of available jobs because it was not supported by substantial evidence.

A vocational expert, Dennis King, testified at the Plaintiff's hearing. King's resume and curriculum vitae, reflecting extensive experience in serving as a vocational expert in SSA proceedings and in rehabilitation counseling, were admitted into the record, R. at 1654, and plaintiff's counsel stipulated that the vocational expert was qualified to testify. R. at 1345. The ALJ asked King to identify a sampling of sedentary jobs that a person with the above-mentioned RFC could perform. R. at 1346. In response to the ALJ's query, the vocational expert testified that there were three jobs that such an individual could perform: lens inserter, DOT 713.687-026 with 30,200 positions nationally; PC board taper, DOT 017.684-010, 496,600 jobs nationally, and jewelry preparer, DOT 700.687-062, 37,700 positions nationally. *Id.* at 1346 - 47. Plaintiff's counsel asked the vocational expert what he "rel[ied] on for the job numbers [he] named." R. at 1349. The vocational expert responded that he calculated the numbers using division and extrapolation of data from the U.S. Bureau of Labor Statistics, the Selected Characteristics of

Occupations ("SCO"), a companion volume to the U.S. Department of Labor's Dictionary of Occupational Titles, and the O*Net, a database maintained by the DOL. R. at 1350. Plaintiff's counsel did not object to or challenge the testimony. R. at 1351. In his decision the ALJ stated that he considered and accepted the vocational expert's testimony in determining that the Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. at 1293.

The Plaintiff now challenges the accuracy of the vocational expert's testimony and offers her own calculation as to the number of available jobs, asserting that there are only 300 jobs total for all three occupations. ECF No. 14-1 at 15.

"An identification of the general sources and consideration of the experience and expertise of the vocational expert suffices; the ALJ need not inquire into the vocational expert's precise methodology." *Debiase v. Saul*, No. 3:19CV68(RMS), 2019 WL 5485269, at *11 (D. Conn. Oct. 25, 2019). *See also Biestek,* 139 S. Ct. at 1154 (2019) (a vocational expert's testimony concerning job incidence numbers may constitute substantial evidence, even when the supporting data underlying that conclusion are not disclosed.)

Here, the vocational expert's testimony clears the substantial evidence bar. King testified that his data and figures were derived from his calculations using data from the U.S. Bureau of Labor and the O-Net. *Id.* at 1348 - 49. The "majority" of courts presented with similar challenges to job incidence numbers "have declined to find error at step five because to date, the Second Circuit does not require a detailed scrutiny of a vocational expert's methods." *Poole v. Saul*, 462 F. Supp. 3d 137, 164 (D. Conn. 2020) (internal quotation marks and citation omitted). *See Angelica M. v. Saul*, No. 3:20CV727(JCH), 2021 WL 2947679, at *9 n.4 (D. Conn. July 14, 2021) ("To the extent that Angelica puts forth arguments urging the court to conduct its own analysis of

available job numbers and second guess the vocational expert's conclusions, the court declines to do so."); *Bonazelli v. Saul*, No. 3:19CV1566(JAM), 2021 WL 791176, at *6 (D. Conn. Mar. 1, 2021) (plaintiff's challenge to the vocational expert's jobs-numbers data unavailing because the substantial evidence requirement does not require that the vocational expert disclose his jobs-numbers data; noting in addition that at the hearing "counsel disputed neither the vocational expert's credentials nor jobs-numbers testimony"); *George v. Saul*, No. 3:19CV1456(JAM), 2020 WL 6054654, at *6 (D. Conn. Oct. 14, 2020) (rejecting plaintiff's challenge to vocational expert testimony where plaintiff offered job numbers from an alternative source); *Poole*, 462 F. Supp. 3d at 165 (holding that a vocational expert's testimony provided substantial evidence for an ALJ's finding even though the vocational expert's numbers conflicted with those from counsel's independent research). As permitted by the Second Circuit, the ALJ reasonably relied upon the vocational expert's testimony to support the step five finding.

**III.    Conclusion**

For these reasons, the Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 14) is DENIED and the Commissioner's Motion to Affirm the Decision (ECF No. 15) is GRANTED. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Dated: August 12, 2021
      Hartford, Connecticut

                                      /s/
                              Michael P. Shea, U.S.D.J.